**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

|                                    |   |                       |
|---|---|---|
| UNITED STATES OF AMERICA,          | ) |                       |
|                          Plaintiff,| ) | **CRIMINAL ACTION**   |
| v.                                 | ) | No. 11-10049-MLB      |
| FIGUEROA-CRUZ AND MORENO-CERON,    | ) |                       |
|                          Defendant.| ) |                       |

**MEMORANDUM AND ORDER**

This case comes before the court on defendants' joint motion to suppress. (Doc. 21). The court conducted an evidentiary hearing on June 6, 2011 and the motion is ripe for decision. Defendants' motion is denied for the reasons herein.

**I. Facts**

On March 16, 2011, Kansas Highway Patrol Trooper Jason Duffey was patrolling eastbound on Interstate 70 near Colby, Kansas. Duffey's patrol vehicle was equipped with a radar unit that could detect the speeds of cars coming and going from antennas in the front and rear of the vehicle. The radar unit also was able to check the patrol vehicle's ground speed within one mile per hour accuracy. Duffey conducted a calibration test of the radar unit before and after his shift.

Duffey observed a white Nissan Maxima approaching from behind in the passing lane about a quarter of a mile to an eighth of a mile away. No vehicles were in between his patrol vehicle and the Maxima at the time. Duffey activated the rear radar and the display showed the Maxima traveling at seventy-six (76) miles per hour in a portion

of the interstate posted for a maximum speed of seventy (70) miles per hour. Duffey observed the front end of the Maxima dip, indicating the driver braked. The radar showed the speed of the Maxima decrease to sixty-five (65) miles per hour. The Maxima followed Duffey's patrol vehicle, traveling at about sixty (60) miles per hour, for about a mile. Duffey slowed his vehicle down further and the Maxima proceeded to pass in the passing lane.

Duffey activated his emergency lights and stopped the Maxima. Although the camera from the patrol vehicle was designed to capture thirty seconds of video before the emergency lights are activated, Duffey's recording system had not done so for about two years, even though he continued to install the video system's updates. Duffey approached the Maxima. Defendant Figueroa-Cruz was the driver of the vehicle and defendant Moreno-Ceron was in the passenger seat. After initially trying to speak with Figueroa-Cruz, who does not speak or understand English, Duffey addressed Moreno-Ceron for the remainder of the stop. Moreno-Ceron told Duffey he owned the Maxima.

At the hearing, William Downing, the media director for the Kansas Highway Patrol, testified that he had not previously heard of Duffey's problems with the video equipment and the lack of recording thirty seconds before a trigger. He also testified that Duffey had no way to manipulate his camera to avoid recording thirty seconds before the trigger.

Figueroa-Cruz testified that he had set the Maxima's cruise control between sixty-six (66) and sixty-nine (69) miles per hour and had used the brake to stop the cruise control when he saw the trooper. Figueroa-Cruz testified that he traveled in the same lane as the

trooper until he needed to pass and that the trooper was probably going between forty-five (45) and fifty-five (55) miles per hour "checking vehicles coming." Figueroa-Cruz first noticed the trooper about fifty (50) yards behind the patrol vehicle. Figueroa-Cruz also testified one large vehicle traveled between the Maxima and the trooper and that many vehicles were traveling behind him. Figueroa-Cruz had been driving for about five hours and had done nothing to certify the accuracy of the speedometer or cruise control.

Moreno-Ceron testified that the cruise control was set because the cruise light was on and Figueroa's feet were not on the pedals. Moreno-Ceron testified the cruise control was set to sixty-nine (69) miles per hour and that the vehicle traveled in the same lane as the trooper until it was close enough to pass because the trooper was going "way below the speed limit." Moreno-Ceron testified he saw at least three cars pass the trooper and other vehicles were passing the Maxima. Although Moreno-Ceron originally told Duffey that he owned the Maxima, he testified at the hearing that he did not own the Maxima. Moreno-Ceron drove the Maxima for more than ten hours and had done nothing to check the accuracy of the cruise control or speedometer. Defendants move to suppress evidence obtained during the stop.

**II. Analysis**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has liberally interpreted "seizures" to encompass routine traffic stops, "even though the purpose of the stop is limited

-3-

and the resulting detention quite brief." See Delaware v. Prouse, 440 U.S. 648, 653 (1979). "Because an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest," the stops are analyzed under the principles articulated in Terry v. Ohio. United States v. King, No. 05-6399 (10th Cir. Dec. 18, 2006). The two-pronged standard espoused in Terry v. Ohio, 392 U.S. 1 (1968), thus applies, see United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001), and renders a traffic stop reasonable if "the officer's action was justified at its inception, and [if] it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. An initial traffic stop is justified at its inception if it was "based on an observed traffic violation," or if "the officer has a reasonable articulable suspicion that a traffic . . . violation has occurred." United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998).

The court finds that Duffey was justified in stopping the Maxima in the first instance. Defendants argue that the Maxima was not traveling above the speed limit because the cruise control was set between sixty-six (66) and sixty-nine (69) miles per hour and Duffey's patrol vehicle was traveling below the speed limit with a line of cars p assing him at the same time defendants did. The court, however, accepts Duffey's testimony that he observed a speeding violation based on the reading from his radar unit. Duffey credibly testified to the accuracy of his radar and that he was able to detect the Maxima's speed regardless of the speed of his patrol vehicle. Because the Maxima's cruise control had not been checked for accuracy, defendants' use of cruise control does not negate Duffey's observations, based on

-4-

the reading of the radar unit, that the defendants committed a speeding violation. Therefore, Duffey was justified in making the initial stop.

**III. CONCLUSION**

As a result of the above analysis, the court finds that there was a lawful initial stop. Defendants' motion to suppress (Doc. 21) is denied.

IT IS SO ORDERED.

Dated this __9th__ day of June 2011, at Wichita, Kansas.

s/ Monti Belot  
Monti L. Belot  
UNITED STATES DISTRICT JUDGE